# Curry *v.* Bacharach Quality Shops, Inc., Appellant.

*Landlord and tenant—Lease—Written option to extend—Evidence—Statute of frauds.*

1. Where a lease is executed for three years, and four days thereafter the lessor delivers to the lessee a writing in which he says that "in consideration of your signing the lease," an option is given to extend it for a specified number of years, describing the premises as in the lease, the written option is not parol evidence, but is an essential element of the written contract, and is not subject to the rule that, as it was omitted from the lease, it cannot be proved.

2. Effect must be given the option in the light in which the then owner regarded it.

3. In the absence of evidence to the contrary, the inference will prevail that the option came as the result of an understanding between the parties, arrived at during the negotiations for the lease, to be executed and given in the manner indicated.

4. In such case, the consideration of the option was the signing of the lease.

5. It seems that, as the original agreement contemplated an option, the moral obligation on the part of the lessor, would also support, as a sufficient consideration, the written option subsequently given.

6. An oral promise, unenforceable because of the statute of frauds, may be made good by a subsequent writing.

7. The memorandum required by the statute of frauds, may be on different papers, if one contains reference to the other.

*Landlord and tenant—Sheriff's sale of property sold under mortgage prior to lease—Affirmation of lease.*

8. A purchaser of property at a sheriff's sale under a mortgage, prior in date to a lease of the premises, may affirm or disaffirm the lease. If he affirms it, he becomes subject to all the advantages and disadvantages of the lessor.

9. When such purchaser accepts rent from the tenant in possession, without inquiring as to the extent of the tenant's rights, he affirms the lease, and this carries with it the affirmance of an option to extend given in writing four days after the lease was executed.

*Landlord and tenant—Warrant to confess judgment—Waiver of appeal.*

10. A provision in a lease waiving right to appeal or writ of error to any judgment entered under the lease, and releasing all errors and defects in entering such judgment, if based on sufficient consideration, is valid and binding.

11. But where, under such a provision, an effort is made to use the provision, in fraud of one of the party's rights, such waiver being at best in derogation of highly important rights, will receive a very strict construction.

12. Such waiver and release is not a waiver of the right to have inquiry made into the power of the lessor to enter judgment at all. What it does is to release to the lessor all errors or defects in the judgment, or in causing the writ to be issued.

13. It does not contemplate judicial errors in the proceeding, when the lessor's right to enter the judgment is inquired into.

*Landlord and tenant — Assignment of lease — Waiver of appeal from judgment—Rights of assignee—Practice, C. P.—Form of suit.*

14. A provision in a lease that "all rights, remedies and liabilities" shall extend "so far as this lease, and the term or terms thereby created, is assignable by the terms hereof to the assigns of such party," does not render the lessee's waiver of right of appeal, etc., from judgment entered under the lease available to the assigns, if the liability imposed on the lessee has not been assigned to the assignee in clear and explicit language.

15. Such waiver does not create a right or remedy in the landlord, but is merely a restriction or abandonment of a "right" by the lessee.

16. It seems that a judgment entered by the assignee of a lease, under a power to confess judgment, should be in the name of the assignor, to the assignee's use.

*Landlord and tenant—"Term"—Words and phrases.*

17. A term does not mean only the time in the lease, but it is an interest or estate created in the lessee, conveyed to him by the lessor, and vesting in him under the lease by possession.

Argued May 17, 1921. Appeal, No. 424, Jan. T., 1921, by defendant, from order of C. P. No. 2, Phila. Co., Sept. T., 1920, No. 8177, discharging rule to open judgment, in case of William Curry v. Bacharach Quality Shops, Inc. Before Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Reversed.

Rule to open judgment entered on warrant to confess in lease. Before BARRATT, P. J.

The opinion of the Supreme Court states the facts. Rule discharged. Defendant appealed.

*Error assigned* was order, quoting it.

*George Wharton Pepper,* with him *R. W. Archbald, Jr.,* for appellant.—There was consideration for the option paper so that it was binding on Stafford.

The principal's own oral promise, unenforceable because of the statute of frauds, is made good by a subsequent writing: Anderson v. Best, 176 Pa. 498.

That part of the statute of frauds which deals with promises to answer for the debt of another, has been treated in the same way: Title Guaranty & Surety Co. v. Lippincott, 252 Pa. 112.

A decision which exactly meets the situation in the present case is: Hurless v. Wiley, 91 Kan. 347; L. R. A. 1915 C 177.

In spite of the parol evidence rule, the consideration for a written promise may always be shown by parol: Jack v. Dougherty, 3 Watts 151; Strawbridge v. Cartledge, 7 W. & S. 394; Buckley's App., 48 Pa. 491; Lewis v. Brewster, 57 Pa. 410; Sargeant v. Ins. Co., 189 Pa. 341; Henry v. Zurflieh, 203 Pa. 440; Miles v. Waggoner, 23 Pa. Superior Ct. 432; McGary v. McDermott, 207 Pa. 620; Tasin v. Bastress, 268 Pa. 85.

The testimony in this case shows the familiar exception to the parol evidence rule, viz: a contemporaneous oral promise by means of which defendant's signature was obtained to the lease of August 4th; and it thus further appears that the consideration was not past, and that the option really dates back to the time of execution of the lease: Gandy v. Weckerly, 220 Pa. 285; Noel v. Kessler, 252 Pa. 244.

The option of extension is a complete and definite

agreement: McDonald v. Karpeles, 61 Pa. Superior Ct. 496.

The benefit of the release of errors and waiver of appeal has not passed to appellee as assignee of the lessor: Jenks v. Hendley, 6 Phila. 518.

Neither the release of errors nor the waiver of appeal properly construed bars an appeal from a refusal to open the judgment in ejectment: Dawson v. Condy, 7 S. & R. 366; Phila. v. Johnson, 23 Pa. Superior Ct. 591; Fogerty v. Dix, 75 Pa. Superior Ct. 214.

*Horace M. Rumsey*, with him *Hiram B. Calkins*, for appellee.—Where the oral agreement is contemporaneous, it must be shown to have been omitted through fraud, accident or mistake from the writing, otherwise evidence of it will not be admitted. This would seem to be the effect of the decision in Gandy v. Weckerly, 220 Pa. 285.

A contemporaneous oral agreement which directly contradicts the terms of a written contract should not be received in evidence: Clarke v. Allen, 132 Pa. 40; Martin v. Berens, 67 Pa. 459; Clinch Val. Coal & I. Co. v. Willing, 180 Pa. 167.

A covenant for renewal must be founded on a consideration, and a covenant gratuitously entered into, subject to the execution of the lease, will not be enforced.

Notice to William Curry of the so-called option, prior to the time when he secured title, was not such notice as would bind his title: Coleman v. Applegarth, 68 Md. 21.

A stipulation, contained in a written instrument, waiving a right of appeal, is valid and binding, and precludes the taking of an appeal from an order of the court in a suit on the written instrument: Groll v. Gegenheimer, 147 Pa. 162; McCahan v. Reamey, 33 Pa. 535; Shisler v. Keavy, 75 Pa. 79; Williams v. Danziger, 91 Pa. 232; Sergeant v. Clark, 108 Pa. 588; Cramp Co. v. Casket Co., 241 Pa. 15.

OPINION BY MR. JUSTICE KEPHART, July 1, 1921:

This is an appeal from an order of the court below discharging a rule to open a judgment entered upon a lease. August 4, 1917, appellant, by a judgment-ejectment lease, acquired from John Stafford, Sr., for a term of three years, the first floor and basement of 1114 Chestnut Street, Philadelphia. A few days later, August 8th, it received a paper from the owner, reading: "It is mutually understood between us that in consideration of your signing a lease covering the first floor store and basement of No. 1114 Chestnut Street for a period of three years from November 1, 1917, that the option of an extension of either two or seven additional years is hereby given to you, with the provision that, in the event of the option being exercised, notice shall be given me to that effect in writing at least three months prior to the expiration of the above-mentioned three years from November 1, 1917. Jno. Stafford." This was approved by appellant.

It is appellee's contention that prior negotiations were merged in the written contract of lease and the option. was but an oral promise to alter or vary the terms of the written instrument, and, being contemporaneous with the original agreement and not having been omitted therefrom through fraud, accident or mistake, evidence of the oral promise cannot be received. Undoubtedly, had the latter been incorporated in the lease or delivered with the lease, there could be no question but it was a part of that instrument; an examination of the paper shows, though dated four days after, the interval of time made no difference and it was intended to be a part of the instrument under which appellant took the property. It is complete in itself, having in it all that is necessary to make it clear and explicit. Appellee urges there was no consideration for the option as the lease had been executed and grantor's act in giving the option was a mere gift; or, if other consideration existed, it must be shown by parol, and, being an essential ele-

ment of the contract, it is within the statute. The option speaks in this language: "In consideration of your signing a lease." John Stafford was not called to testify the paper was given as an after-thought or a gift, and that there was no real consideration moving to him; effect must be given the option in the light in which the then owner regarded it. The inference is strong it came as the result of an understanding between the parties, arrived at during the negotiations for the lease, to be executed and given in the manner indicated above; the real consideration, then, was the signing of the lease. Moreover, the testimony bears out the conclusion and presents such a meritorious case that it is difficult to understand how a contrary inference could have been reached. The option, including the consideration, is not parol evidence; it is written evidence, complete in itself, and would require other evidence to destroy its effect. "In consideration of your signing this lease" expresses an adequate consideration, and, in connection with the written lease already in existence, sufficient to move the owner to act. To conclude otherwise, evidence should be produced to show that there was no consideration moving to the owner. Without such proof, a written instrument cannot be made of no effect simply because there is a slight difference in the date of another paper of which it unquestionably is a part, and this without the testimony of the only person then affected. The mere interval of time does not destroy the concrete fact, reduced to writing, "in consideration of your signing this lease, I give you this option." An oral promise, unenforceable because of the statute of frauds, may be made good by a subsequent writing. "The statute does not declare the contracts upon which those promises were made either illegal or void. It simply refuses to enforce them unless proved by a writing. When the defendant put his promise to pay in writing he obviated all difficulty from the statute. The original promises could not have been recovered upon, but this judgment is not on the original

promises but on the written undertaking to pay": Anderson v. Best, 176 Pa. 498, 502. We need not consider the statute of frauds in connection with the option; it has been thoroughly treated in Title G. & S. Co. v. Lippincott, 252 Pa. 112, 116 et seq., by our present Chief Justice.

We are of opinion the option related back to and was part of the lease; it evidences Stafford knew about the transaction between his son and appellant, and, as appears from the testimony, the lease and option carried out precisely his idea and the agreement the parties made. Indeed, if necessary to the decision, the moral obligation arising from the evidence in connection with the negotiations would support the written option as sufficient consideration: Anderson v. Best, supra, 502.

When the lease was executed, the property was subject to a mortgage held by John Cadwalader, who foreclosed and purchased it at sheriff's sale, taking an assignment of the lease. He made no effort to learn from the tenant the character of his holding but continued to receive the rent from him. Cadwalader knew there was an outstanding option. Just when he learned of it does not appear, but a year later he notified lessee he disaffirmed it. This was too late. A purchaser at sheriff's sale has the right to affirm or disaffirm the lease, and, if he elects the former course, may require the rent to be paid to him as assignee of the reversion. If he disaffirms it he has a summary remedy to obtain possession under our present laws, and when he affirms it he has all the remedies of a landlord, subject to all the advantages and disadvantages of that relation. The existence of the lease gives notice of all its provisions, but possession apart from the lease is notice of the possessor's claim of title, whatever it may be: Anderson v. Brinser, 129 Pa. 376, 404. Had inquiry been made of the tenant in possession, his claim under the lease would have been developed. Cadwalader, having this constructive notice, not only affirmed the lease by accepting the rent under it for a

year, but when he sold the property he assigned it to the plaintiff, who is now acting under it by a confession of judgment: Farmers' and Mechanics' Bank v. Ege, 9 Watts 436, 439; Tilford v. Fleming, 64 Pa. 300, 302; Braker v. Deuser, 49 Pa. Superior Ct. 215, 217. The affirmance of the lease carried with it the affirmance of the option. Once having accepted attornment, neither Cadwalader, nor plaintiff as assignee, could subsequently disavow it. The present plaintiff, as purchaser of the property and assignee of the lease through a straw man from Cadwalader, was affected with this knowledge; but he also knew of it in another way. He was subtenant under appellant, holding with knowledge of the option. Appellant notified him, and all parties necessary, of his purpose to exercise his option for the period of seven years. There is nothing in the record to deny him this right; immediately upon receipt of the notice within the option, the lease became a lease for ten years from the 4th of August, 1917. It should have been so held by the court below.

Having a lease for ten years, the lessor, before the end of the term, entered a judgment in ejectment under it and proceeded to issue a writ for possession. No rent was due, no covenant broken, but appellee sought to sustain his act and evade responsibility under certain clauses of the lease. If his view is correct, then the time-honored judgment-ejectment-waiver leases have a meaning never contemplated by the parties nor heretofore pressed on this court as the law. A lease for ten years may be at the will of the lessor, and any outlay made on account thereof lost. The paragraphs in the lease depended on are as follows: (11th) "And lessee hereby releases to lessor all errors and defects whatsoever in entering such action or judgment, or causing such writ of habere facias possessionem to be issued, or in any proceeding thereon or concerning the same; and hereby agrees that no writ of error or objection or exception shall be made or taken thereto ........" (12th) "The

lessee waives all right of appeal from, or writ of error to, any judgment, order or decree that may be entered against it by any court or magistrate for rent, damages, possession or otherwise. All rights, remedies and liabilities herein given to, or imposed upon, either of the parties hereto shall extend to the heirs, executors, administrators, successors, and, so far as this lease and the term or terms thereby created is assignable by the terms hereof, to the assigns of such party."

It is not our purpose to depart from the legal principle which holds that an agreement not to appeal or take out a writ of error, or which releases all errors, if based on sufficient consideration, is valid and binding, constituting a bar to proceedings taken in violation thereof. As to the original parties and those who follow, such agreement will be given effect in all matters lawfully entitled. Parties to a controversy have the right to select the forum in which to settle their differences and to determine matters which arise in the course of the execution of a contract, but where, under such provision, an effort is made to use it in fraud of one of the parties' rights, such waiver, being at best in derogation of highly important rights, will, as in this instance, receive a very strict construction.

Here the owners of the property have twice assigned the lease and it is now proposed the waivers and releases shall operate for the last assignee's benefit directly contrary to the terms of the agreement. The judgment in this case is not entered for the use of the present plaintiff but in his own name; though this may not be error, it should have been entered in Stafford's name to plaintiff's use, as he was merely equitable owner of the power to confess judgment.

Paragraph 11, quoted above, is for the benefit of the lessor and those who follow him. It is not a waiver of the right to have inquiry made into the power of the lessor to enter the judgment at all. What it does is to release to the lessor all errors or defects in the judgment

or in causing the writ to be issued. Under it defendant could not take an appeal from the judgment in ejectment thus amicably entered, without 'more; he could not secure a stay of execution, thus delaying the appeal, nor could he take advantage of any procedural errors on the part of the lessor. As said in an early case, "These are not mere errors and defects in the entry of the action or judgment, to which, by its terms, the release is confined": afterwards reiterated in Phila. v. Johnson, 23 Pa. Superior Ct. 591, 596, and affirmed by this court in 208 Pa. 645, 647, wherein it is said, "The release of errors in connection with the warrant of authority operates only on irregularities in the proceeding apparent on the record. It does not reach the defect of a lack of authority to proceed." See also Fogerty v. Dix, 75 Pa. Superior Ct. 214, 218. This paragraph did not contemplate judicial errors in the proceeding when the lessor's right to enter the judgment is inquired into. Rules to open and to strike off judgments are illustrations, and the rest of the paragraph is germane to that immediately preceding.

Plaintiff here appears as assignee and obtains whatever right he acquires to the waiver of appeal in the next paragraph as such assignee. A waiver, though not an estoppel, is said to belong to that family, and has many of its elements. It is the abandonment or relinquishment of a known right. It is variously defined and applied (see Words and Phrases, 2d series). The waiver of the appeal does not create a right in the landlord; it is but a restriction or an abandonment of a right by the lessee, the observance of which may be enforced in the courts by the lessor: Watson v. Wetter, 91 Pa. 385, 386; Seagrave v. Lacy, 28 Pa. Superior Ct. 586, 587; Groll v. Gegenheimer, 147 Pa. 162. By such covenant he estops himself from asserting his preëxisting right to the contrary. The point we wish to bring out is that a waiver of appeal does not create in the lessor such a right as is brought within the "rights, remedies and liabilities." Nor is a waiver a remedy. It may be a part of a rem-

edy, in the nature of a protection, but it does not constitute, in itself, a remedy; so that, in either event, to have the assignee receive the benefit of this waiver, it should be carried through the lease into subsequent assignments by clear and explicit language, evidencing an intention to have it run with the lease. No property right, real or personal, is affected by such waiver. It is merely intended to insure the honest exercise of a remedy by the lessor against an attack from the lessee. It should not be made to insure against a dishonest effort. Moreover, appellee claims as an assignee under the lease. Whatever right he may have is found in this language, "so far as this lease and the term or terms thereby created is assignable by the terms hereof to the assigns of such party." No doubt the lessor could assign the lease, but he attaches to the assignment *"the term or terms thereby created,"* having in mind, evidently, that when, as lessor, he assigned the lease, the term was assigned. A term does not mean only the time in the lease, but it is an interest or estate created in the lessee and conveyed to him by the lessor and vesting in him under the lease by possession: Sanderson v. Scranton, 105 Pa. 469, 472-473. How could the lessor assign the lessee's term? Of course he could not; so that the liability imposed on the lessee, to wit, to be silent when a judgment for possession has been entered, or the right in the assignee of the lessor to avail himself of this silence, has not been assigned to him under the terms of this lease. See Fogerty v. Dix, supra. Since no provision appears in the lease authorizing defendant to assign it or the "term or terms thereby created," and Stafford's right to assign to plaintiff the "rights, remedies and liabilities" given by the lease is permissible only "so far as this lease and the term or terms thereby created" is concerned, plaintiff obtained no right, defendant's waiver being to Stafford alone, who is not a party to the suit. This irremediable defect appears of record, and may be reviewed on certiorari, which has not been waived, even if it could be,

which is more than doubtful: Duquesne City v. Fincke, 269 Pa. 112.

For these reasons the motion to quash is denied; the order of the court below discharging the rule is reversed; the rule is reinstated and it is ordered that the same be made absolute; the judgment is directed to be opened, the court below to make the usual orders that the proceeding may be duly prosecuted to final determination. Writ stayed meanwhile, pending final determination; appellee to pay costs.